IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RICHARD E. WEAVER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM OPINION<br>AND RECOMMENDATION**<br><br>1:04CV1068 |

Plaintiff, Richard E. Weaver, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on February 8, 2002, alleging a disability onset date of April 15, 1996. Tr. 48. The applications were denied initially and upon reconsideration. Tr. 32, 37. Plaintiff requested a hearing *de novo* before an Administrative Law Judge (ALJ). Tr. 40. The hearing was scheduled for January 13,

2004.  By letter dated January 12, 2004, however, Plaintiff's attorney waived Plaintiff's right to an oral hearing and requested that the ALJ decide the matter based on the documentary evidence of record.  Tr. 96.

By decision dated March 25, 2004, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.  Tr. 15.  On September 9, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  Tr. 5.  Plaintiff thereafter filed a civil action in this court and upon the joint motion of the parties, the court entered on January 26, 2005, a Consent Order under sentence six of 42 U.S.C. § 405(g), remanding the case to the Commissioner to obtain new evidence regarding the severity of Plaintiff's intellectual defect.  Tr. 247.  This court retained jurisdiction.[1]

Pursuant to the Consent Order, the Appeals Council remanded the matter to the ALJ, Tr. 256, and on September 11, 2007, a hearing was held.  Tr. 203.  Present at the hearing were Plaintiff, his attorney, a vocational expert ("VE") and a medical expert ("ME").  Id.  By decision dated December 27, 2007, the ALJ again determined that Plaintiff was not disabled within the meaning of the Act.  Tr. 185.  Pursuant to

---

[1] In a sentence-six remand, the statutory provision itself specifically requires the Commissioner to return to district court to file additional or modified findings of fact after the new evidence is heard.  Melkonyan v. Sullivan, 501 U.S. 89, 98, 111 S.Ct. 2157, 2163 (1991).  Because the parties must return to district court after the remand proceedings to file the Commissioner's findings of fact, the district court retains jurisdiction over the case throughout the remand proceedings.  Id. at 98-99, 111 S.Ct. at 2163-64.

20 C.F.R. § 404.984(a), this decision is the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant met the insured status requirements of the Social Security Act through September 30, 2001.
>
> 2. The claimant has not engaged in substantial gainful activity since April 15, 1996, his alleged onset date. (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairment: borderline intelligence. (20 CFR 404.1520(c) and 416.920(c)).

Tr. 191. He continued:

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

Tr. 192.

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: limited to simple, routine, repetitive tasks, no high production or fact paced work, and little social interaction.

Tr. 196.

The ALJ then determined that Plaintiff is able to perform his past relevant work as a pipe layer as he performed it. Tr. 198. He further found that even if Plaintiff could not perform his past relevant work, the Administration met its burden to

3

establish that there are other jobs which exist in the national economy that Plaintiff can perform. Id.

Specifically, the ALJ found that Plaintiff, born on February 17, 1965, was thirty-one years old at the time of the ALJ's decision, regulatorily defined as a "younger individual." Tr. 198 (citing 20 C.F.R. §§ 404.1563 and 416.963). Plaintiff is illiterate and can communicate in English. Transferability of job skills was not an issue in the case. Based on these factors, Plaintiff's residual functional capacity ("RFC"), and the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 199 (citing 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966). Accordingly, the ALJ found that Plaintiff was not under a "disability," as defined in the Act, from April 15, 1996, through the date of his decision. Tr. 200.

## **Analysis**

In his brief before the court, Plaintiff argues that the ALJ erred at steps two and three of the sequential evaluation process in finding that Plaintiff's only severe limitation is borderline intelligence and that Plaintiff does not meet Listing 12.05B. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

4

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration ("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions (the "sequential evaluation process"). An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. §§ 404.1520, 416.920.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a *de novo* review of the evidence and

---

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

5

requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Issues

Plaintiff argues that there is not substantial evidence to support the ALJ's findings at steps two and three of the sequential evaluation process that Plaintiff's severe impairments are limited to borderline intelligence and that his impairment does not meet the standards of Listing 12.05B for mental retardation. The Listing reads in relevant part as follows:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the

6

> evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

The ALJ considered the record evidence, as well as the testimony of Plaintiff and the medical expert, Dr. Carlos Kronberger ("ME"), in reaching his findings. The ALJ specifically considered the report of Dr. Dennis Lynch, a consulting psychologist, who tested Plaintiff in April 2002 and concluded that he had a verbal IQ score of 54, a performance IQ of 64 and a full scale IQ of 54. Tr. 191 (citing Tr. 148-53). He diagnosed Plaintiff with learning disability, mild mental retardation and rule out alcohol induced dementia. Tr. 152-53.[3] The ALJ further considered that testing showed Plaintiff functioned below the first percentile in reading, spelling and math. Tr. 191. The ALJ also evaluated the findings of another consulting psychologist, Dr. Wanda Webb, who examined Plaintiff in prison in June 2005. Testing showed a verbal IQ of 68, a performance IQ of 64 and a full scale IQ of 57. Dr. Webb concluded that Plaintiff was functioning significantly below age appropriate

---

[3] An addendum to Dr. Lynch's report dated April 28, 2002, revised these diagnoses. Learning disability was removed, leaving alcohol induced dementia, rule out, and mild mental retardation. Tr. 154.

behavior, and she diagnosed Plaintiff with mild mental retardation and rule out antisocial personality. Tr. 191 (citing Tr. 311-17).

The ALJ also noted prison records which showed no observations of mental abnormalities during health screenings and revealed that Plaintiff was independent in his activities of daily living. Tr. 191 (citing Tr. 320-86). Finally, he considered the results of a Beta III IQ test given in 2004, on which Plaintiff scored a 73. Tr. 191 (citing Tr. 303).

Having considered the record in its entirety, the ALJ gave the most weight to the testimony of the ME in "assessing the severity and limiting effects of [Plaintiff's] impairments." Tr. 192. The ME was given an opportunity to review the record evidence and to listen to Plaintiff's testimony. He testified that based on a number of factors, discussed below, Plaintiff is not mentally retarded as defined in Section 12.05 of the Listings of Mental Impairments. The ALJ found the ME's opinion consistent with the opinions of state agency psychological consultants Dr. W. H. Perkins and Dr. Margaret Weibe, both of whom concluded that Plaintiff's functioning seemed somewhat higher than testing indicated. Tr. 195. Based on the ME's testimony, the ALJ found that Plaintiff is of borderline intelligence. Id.

As set forth in the ALJ's decision, the ME testified that his opinion was based on the following factors:

1. Plaintiff's IQ results from when he was a child include a non-verbal IQ score of 78, which the ME characterized as "pretty high," and a Slosson score that

8

was in the mid-range of borderline level. The ME acknowledged that there was also a verbal IQ score of 66 and a full scale IQ score of 70 in the school records, but he also noted that there was no record that Plaintiff was in special education classes, and that in his opinion, it is doubtful that a child with such scores would be placed in a special class. Tr. 222.

2.  The records from Plaintiff's hospitalization and detoxification treatment in 2001 do not include any mention of mental retardation, even though a mini mental status exam was done on intake. See Tr. 224. According to the ME, the mental health professionals would have been obligated to include such a diagnosis if present.

3.  In 2004, Plaintiff received a Beta III IQ score of 73, which is clearly within the borderline range. Tr. 225-26. The ME also testified that the scores of non-readers tend to decline as they get older. The ME opined that these results should be used instead of the WAIS[4] scores because the Beta III includes revisions to account for generational gains in IQ scores, while the WAIS does not. Id. He also opined that the scores from Dr. Lynch's testing were not valid because the report includes both diagnoses of learning disability and mental retardation, which are in fact, mutually exclusive. Tr. 220-221. The ME also believed the jobs listed in Dr. Lynch's report are credible evidence that Plaintiff is not functioning in the mentally retarded range. The ME concluded that based on language in Dr. Lynch's report,

---

[4] Dr. Lynch and Dr. Webb both administered WAIS tests. See Tr. 150, 314.

9

as well as the lack of discussion concerning malingering or whether Plaintiff gave his best effort, the IQ score from Dr. Lynch's testing is not necessarily Plaintiff's current level of functioning. Tr. 228. He further testified that Dr. Webb's results also might not be accurate as she did not have the benefit of accurate and complete information at the time she completed her assessment. Tr. 228. For example, the ME noted, the report denies drug use and gives an incomplete work history. Id.

4. Plaintiff had the functional ability to work a variety of jobs throughout his life. The ME also supposed that Dr. Webb's conclusions might have been different if she had been aware of Plaintiff's work history. Tr. 236.

5. Plaintiff's testimony at the hearing included vocabulary and comprehension that were, in the ME's opinion, not consistent with a finding of mental retardation. Tr. 237.

The ME concluded that based on the evidence, in his opinion, Plaintiff does not meet the diagnosis for mentally retarded or the requirements for any Listing; instead, he performs in the borderline intelligence range. Tr. 229-31.

In essence, Plaintiff's argument challenges the ME's findings and opinions. Plaintiff complains that the Beta III test is inferior to the WAIS tests used by Dr. Webb and Dr. Lynch; that IQ scores obtained before the age of sixteen are not a valid indication of present functioning and thus cannot be used to invalidate current, lower scores; that his work history cannot be used to establish that he is not

10

retarded;[5] that the lack of a mental retardation diagnosis while he was in detox is irrelevant because there is no indication of an intellectual functioning examination, and; that the level of understanding and vocabulary in his own testimony is irrelevant because he is illiterate.[6] Nothing in Plaintiff's argument persuades the court that the ME's findings and opinion, which were based on the ME's review of the record as a whole as well as his observations of Plaintiff, cannot constitute substantial evidence in support of the ALJ's findings.

As noted by the ALJ, the ME is a psychologist experienced in performing psychological evaluations and familiar with the medical literature. Tr. 192. See 20 C.F.R. §§ 404.1513(a), 416.913(a). Medical experts "are highly qualified . . . psychologists who are also experts in Social Security disability evaluation." Their findings are findings of fact and *must* be considered as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I). The ME reviewed the record evidence, and as

---

[5] In support of this argument, Plaintiff cites to Luckey v. U.S. Dept. of HHS, 890 F.2d 666, 668 (4th Cir. 1990) for the proposition that a claimant's work history cannot be used to bar that claimant from receiving disability benefits where he otherwise meets disability guidelines. Pl.'s Br. 14. Luckey, however, is inapposite. Here, the ALJ did not find that Plaintiff's work history precludes finding that he is mentally retarded; instead, it was one of several factors considered by the ME in forming his opinion that Plaintiff is not mentally retarded.

[6] Plaintiff again cites to Luckey, arguing that the Fourth Circuit has held that illiteracy is "'a clear 'manifestation' of mental retardation occurring before age twenty-two.'" Pl.'s Br. 15 (quoting Luckey 890 F.2d at 668 (quoting Turner v. Bowen 856 F.2d 695, 699 (4th Cir. 1988))). Again, however, Luckey is inapposite. In Luckey, unlike in this matter, the only IQ evidence was from a test administered to Plaintiff as part of his application and which showed that Plaintiff had an IQ of 68, which met the requirements for the Listing applicable in that case, Listing 12.05C. Here, there is inconsistent evidence which was evaluated by the ME and on which he properly based his opinions.

11

an expert, reached his own factual conclusions about the relative merit of the tests performed, and of how Plaintiff's medical records, school records and work history did not support a finding of mental retardation. Although Plaintiff disagrees with the ME's findings and opinions,

> [u]nder the Social Security Act, [a reviewing court] *must* uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard. Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. [I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.

Mastro, 270 F.3d at 176 (internal citations omitted)(emphasis added). The ALJ was entitled to give the most weight to the ME's opinion, and Plaintiff's arguments have not persuaded the court otherwise.

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (docket no. 20) seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's

motion for judgment on the pleadings (docket no. 22) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

May 13, 2010